**CORAL GABLES CONVALESCENT HOME, INC., a Florida corporation, Plaintiff,**

v.

**Elliot L. RICHARDSON, etc., et al., Defendants.**

Civ. No. 71–1073.

United States District Court,
S. D. Florida,
Miami Division.

March 13, 1972.

Eli H. Subin, of Roth, Segal & Levine, Orlando, Fla., for plaintiff.

Robert W. Rust, U. S. Atty., and Clemens Hagglund, Asst. U. S. Atty., Miami, Fla., for defendants.

## ORDER GRANTING SUMMARY JUDGMENT

ATKINS, District Judge.

This cause was submitted to the Court on cross motions for summary judgment, filed by both plaintiff and defendants. Although counsel were unable to agree completely on a stipulation of facts, the unilateral fact statements submitted on October 21, 1971 amply demonstrate that there is no genuine issue as to any material fact, and that plaintiff is entitled to a judgment as a matter of law. A three judge court, heretofore convened, has been dissolved upon determination that the relief granted would not "affirmatively . . . interdict the operation of a statutory scheme." Flemming v. Nestor, 363 U.S. 603, 607, 80 S.Ct. 1367, 1371, 4 L.Ed.2d 1435 (1960).

The plaintiff in this cause is a nursing home, qualified as a provider of services under the Medicare Act, 42 U.S.C. § 1395, et seq. Defendant Aetna Life & Casualty Co. (Aetna) is a fiscal intermediary between the Department of Health, Education and Welfare (HEW) and the plaintiff for the purpose of administering payments to the plaintiff for the reasonable costs of its services rendered in the Medicare program. Aetna has, after making payments to the plaintiff, conducted fiscal reviews or audits of the plaintiff's cost reports for costs incurred for services furnished to Medicare beneficiaries for the years ending March 31, 1967 through 1969. On the basis of those audits, Aetna has advised the plaintiff that it received certain amounts of Medicare reimbursement to which it was not entitled. A further informal review of the Aetna reasonable cost determination has been provided, at which time Aetna representatives met with the plaintiff to review the audit of plaintiff's cost reports.

In November, 1970, Aetna commenced deducting fifty percent of payments then due to the plaintiff for current Medicare services to set off and recoup the amounts Aetna claimed to have been overpayments. Continuing fifty percent monthly deductions have been taken from the plaintiff's claims for payment. Plaintiff objects to the determination, after audit and informal conferences but without any administrative hearing, that it had been overpaid for services rendered under the program. There is a dispute between the plaintiff and Aetna (and HEW) concerning the principles upon which the above-mentioned audits have been based, concerning their accuracy, and concerning the propriety of claim deductions.

The plaintiff has not had any administrative agency review, other than that described above, of the above-mentioned audits, of its objections to claim deductions, or of Aetna's determinations regarding these matters. This has been so because there is no provision in the Medicare Act or in rules and regulations promulgated by the Secretary for administrative agency review of provider cost determinations made by fiscal intermediaries. It is stipulated that plaintiff has exhausted all review procedures available to it under the Medicare Act. The failure to afford either an administrative hearing or judicial review of the Aetna audit determination, it is urged, deprived plaintiff of due process of law. In Aquavella v. Richardson, 437 F.2d 397, 405 (2d Cir. 1971), the only reported case dealing with this specific question, the Court expressly refrained from deciding whether the procedures utilized by the defendants violated due process.

The plaintiff argues that it has been denied due process of law in the taking of its "earned property right" without

adequate Fifth Amendment protections. Procedural due process protections apply, of course, where there has been interference with a property right. In this case the right in question is plaintiff's right to reimbursement for costs already incurred in providing Medicare services. Two theories are advanced to support plaintiff's claim. First, it is argued that Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), and its progeny require that plaintiff be afforded procedural due process.

*Goldberg* held that state welfare recipients were entitled, under the Fourteenth Amendment, to an evidentiary hearing before termination of AFDC benefits. In the wake of *Goldberg*, procedural protections have been required in a number of new areas.[1] While not all courts have joined in this judicial renovation of administrative procedures,[2] there is a clearly defined trend toward extension of fair hearing requirements.

This development has been slowed by the imposition of a requirement that there be a serious effect on the one who stands to lose funds because of the challenged agency action, the so-called "brutal need" test.[3] Most of the post-*Goldberg* cases have extended procedural due process protections in non-criminal cases only where something akin to the need of the *Goldberg* plaintiffs existed. In Wright v. Finch, *supra* note 1, at 386, summary suspension of disability benefits was held violative of due process where the plaintiff was "liable to sustain grievous loss while awaiting the resolution of his claim." However, in Anderson v. Finch, 322 F.Supp. 195 (N.D.Ohio 1971), the Court rejected any need for pre-termination hearings since "the loss of [plaintiff's] widow's benefits does not have the draconian effects of a denial of welfare funds."

At least one court has rejected the brutal need limitation on due process. In Crow v. California Department of Human Resources, 325 F.Supp. 1314 (N.D.Cal.1970), it was noted that the Supreme Court referred to "brutal need" in the context of balancing interests, not as an absolute requirement. "It would be anomalous indeed if the Supreme Court's extension of procedural guarantees to welfare eligibility determinations was used to justify a restriction of similar rights previously recognized in other areas." *Crow, supra,* 325 F.Supp. at 1318. Rejection of the limitation is also appropriate here.

Plaintiff could, of course, argue that the condition of the ultimate beneficiaries of the Medicare program, the sick and the aged, highlights the need for a hearing. If an unjust and incor-

1. *See, e. g.,* Almenares v. Wyman, 334 F. Supp. 512 (S.D.N.Y.1971) (reduction of AFDC benefits); Java v. California Department of Human Resources Development, 317 F.Supp. 875 (N.D.Cal.1970), aff'd 402 U.S. 121, 91 S.Ct. 1347, 28 L. Ed.2d 666 (1971) (termination of unemployment benefits); Escalera v. New York City Housing Authority, 425 F.2d 853 (2d Cir.) cert. denied, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970) (termination of public housing tenancy); Caulder v. Durham Housing Authority, 433 F.2d 998 (4th Cir. 1970), cert. denied, 401 U.S. 1003, 91 S.Ct. 1228, 28 L.Ed.2d 539 (1971) (same); Lucas v. Chapman, 430 F.2d 945 (5th Cir. 1970) (refusal to renew teaching contract); Intercontinental Industries, Inc. v. American Stock Exchange, 452 F.2d 935 (5th Cir. 1971) (delisting of stock); Wright v. Finch, 321 F.Supp. 383 (D.D.C.1971),

vacated and remanded, 405 U.S. 208, 92 S.Ct. 788, 31 L.Ed.2d 151 (1972) (suspension of disability insurance benefits); Barnett v. Lindsay, 319 F.Supp. 610 (D. Utah 1970) (initial denial of welfare benefits); Santiago v. McElroy, 319 F.Supp. 284 (E.D.Pa.1970) (sales pursuant to state distress for rent procedures); Pratt v. Kaye, 40 U.S.L.W. 2197 (D.D.C.1971) (determination of truck driver's competency by Bureau of Motor Safety.)

2. *See, e. g.,* Hahn v. Gottlieb, 430 F.2d 1243, 1246 (1st Cir. 1970) (no hearing required before proposed public housing rent increase).

3. In Goldberg v. Kelly, *supra,* the Court adopted this language, which had been suggested in Note, Withdrawal of Public Welfare: The Right to a Prior Hearing, 76 Yale L.J. 1234, 1244 (1967).

rect determination is made by Aetna, plaintiff might be forced to close its doors by the revenue loss. This would result in one less provider able to offer services to those eligible for skilled nursing home care. But plaintiff need not rely on this argument.

■ *Goldberg*, even if not applicable here, typifies the recent expansion of Fifth Amendment protections. A fundamental operative principle in administrative law "is that a person aggrieved by the action of a government agency has a constitutional right to a trial-type hearing on issues of adjudicative fact." Note, Withdrawal of Public Welfare, *supra* n. 3, at 1237. *Accord*, Hannah v. Larche, 363 U.S. 420, 442, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960). Plaintiff's grievance here arises not from a question involving government-administered benefits, but from one involving compensation for services rendered the government. On any balancing of interests analysis, the government's interests in protecting the treasury by prompt recapture of excess payments and by avoidance of evidentiary hearings are not overriding here.

■ This court, like the Second Circuit in Aquavella v. Richardson, 437 F. 2d 397 (2d Cir. 1971), is disconcerted by defendants' contention that plaintiff is entitled to neither administrative nor judicial review of the Aetna determination. Such a position is unjustified under the 'Medicare Act, which neither requires nor proscribes a hearing in the situation at issue. 42 U.S.C. § 1395ff provides for a hearing after two types of determinations, neither of which is applicable here. 42 U.S.C. § 1395ii incorporates a review provision of the Social Security Act, 42 U.S.C. § 405(h), which provides that "findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as

herein provided." It would distort the language of the Act to hold that this provision prohibits any evidentiary hearing before the Secretary on the facts of this case.

■ Accordingly, it is the view of this Court that the failure to afford plaintiff at least a post-reduction hearing constituted a denial of due process. Consequently, the amounts which have been deducted as offsets from current payments since November, 1970 have been unlawfully withheld. The appropriate relief remains to be determined.

■ It is not the province of a district court to make a de novo review of the intermediary's reasonable cost determination. Even under the Social Security Act, 42 U.S.C. § 405(g), where an individual's claim may have been processed through several administrative tribunals, judicial review is governed by a substantial evidence standard. Here plaintiff is entitled only to the evidentiary hearing which should have been available to it. This *nunc pro tunc* hearing should be offered to plaintiff forthwith. Cf. Lucas v. Chapman, 430 F.2d 945 (5th Cir. 1970). Should new regulations prove necessary to put this hearing procedure into effect, they should be adopted immediately. The adoption of such regulations might, of course, moot the constitutional claims presented here, as in Richardson v. Wright, 405 U.S. 208, 92 S.Ct. 788, 31 L.Ed.2d 151 (1972).

The type of hearing required must be "appropriate to the nature of the case." Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Current due process requirements are highly flexible, with the nature of the proceeding determining whether a full trial-type hearing or something less is necessary.

Initially, plaintiff is entitled to written notice within twenty days of the entry of this order of the precise determi-

nations made following the Aetna audit. At the hearing, should plaintiff request one within ten days after receipt of the required notice, plaintiff should be permitted to introduce evidence supporting its reasonable cost contentions and to cross-examine the auditors to ascertain or impeach the basis for their conclusions. This hearing should be held within fifteen days from the date of receipt of plaintiff's request.

Finally, as noted in Goldberg v. Kelly, 397 U.S. 254, 271, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the decision maker, who must be impartial and must not have participated in the audit determination under review, must state the reasons for his decision and indicate the evidence on which he relied.

It is therefore ordered and adjudged as follows:

1. Plaintiff's motion for summary judgment is granted.

2. Defendants' cross-motion for summary judgment is denied.

3. The failure of defendants to afford plaintiff a post-audit evidentiary hearing prior to instituting deductions from current payments constituted a denial of due process.

4. Defendants shall, within ten days from the entry of this order, deposit in the Registry of the Court the total sum heretofore withheld or deducted pursuant to the Aetna audit of cost reports for the years ending March 31, 1967, 1968 and 1969. This sum shall remain in the Registry of the Court pending the outcome of any evidentiary hearing and further order of this Court.

5. Defendants and their agents and employees are hereby permanently enjoined from withholding or deducting as offsets any part of plaintiff's current lawful claims for reimbursement under the Medicare Act until plaintiff has been afforded the fair hearing required by the due process clause of the Fifth Amendment, as described *supra*.